EDWARD W. WILLI, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals.   Opinion Filed July 14, 1920.

1. **TRIAL PRACTICE: Demurrer to Evidence: Inferences: Viewed Most Favorable to Plaintiff.** In considering a demurrer to plaintiff's evidence, the court must take all of plaintiff's testimony as

true, and make every reasonable deduction in his favor which the jury would have been warranted in making.

2. **CARRIERS OF PASSENGERS: Suburban Railroad: Injury to Prospective Passenger on Station Platform: Negligence: Proximate Cause: Question for the Jury.** In an action for damages against a suburban railroad for injuries sustained by a prospective passenger struck by a car while he was standing on a station platform, where plaintiff's evidence tended to show that defendant's car approached the station with no headlight burning, and with no light on the front vestibule of the car; that no whistle or gong was sounded or other warning given; and that the car passed the station at a speed of ten miles an hour, and ran from fifty to sixty feet past the east end of the platform before being stopped, *held* that these acts could be said to constitute negligence on the part of the defendant, and the jury could have determined such acts to have been the proximate cause of plaintiff's injuries, notwithstanding plaintiff was pushed by the crowd.

3. **NEGLIGENCE: Concurrent Negligence: Part of Proximate Cause: Liability.** If the defendant's negligence concurred with that of another, or with the act of God, and became a part of the direct and proximate cause of the injury, although not the sole cause, the defendant is still liable.

4. **CARRIERS OF PASSENGERS: Suburban Railroad: Injury to Prospective Passenger on Station Platform: Negligence: Proximate Cause; Burden of Proof.** In an action for damages against a suburban railroad for injuries sustained by a prospective passenger struck by a car while he was standing on a station platform, plaintiff carried the burden of showing with reasonable certainty that the negligent act of defendant was one of the proximate causes of his injury, and such fact must not be arrived at by speculation or conjecture.

5. ———: ———: ———: ———: **Instructions: Operating Car at Night Without Lighted Headlight: Question for the Jury.** In an action for damages against a suburban railroad for injuries sustained by a prospective passenger, struck by a car while he was standing on a station platform, where defendant admitted that the headlight was not burning, but introduced evidence tending to excuse such fact by showing that it had recently become out of order, and at the time was being moved to a place where the headlight could be fixed or else the car turned in and another obtained, and there was considerable evidence on behalf of defendant tending to show that the whistle was sounded by the motorman 250 feet west of the station, *held* that defendant's liability was a question for the jury, and in order to hold the defendant liable, the jury must find that the defendant was in fact negligent—that is, failed to exercise due

205 App.—18

care under the circumstances—and that the court was not justified in declaring as a matter of law, under the circumstances of the case, that because the headlight was not burning, or because the whistle or gong was not sounded, that the defendant was guilty of negligence as a matter of law.

6. — ———: ———: ———: ———: ———: ———: **Degree of Care Required.** Where the headlight of a suburban car was out of order, etc., it was the duty of the defendant to use great care in operating the car, especially in approaching its station grounds, where persons would likely be for the purpose of becoming passengers, and *held* it was a question for the jury as to whether it was negligence on the part of defendant to run the car in its defective condition and in the manner in which it was run without a headlight.

7. ———: ———: ———: ———: **Failure to Give Signal on Approaching Station: Question for the Jury.** Furthermore, where one species of negligence submitted, as a distinct predicate of liability, is the failure to sound a gong or whistle, or give other timely warning of the approach of the car to the platform, an instruction telling the jury that if they find "that the motorman in charge of said car failed to sound a gong or whistle, or give any other timely warning of the approach of said car," then the defendant was guilty of negligence warranting a recovery, was erroneous, because it was a question for the jury whether defendant's motorman was negligent in failing to give a warning of the approach of the car, if he did so fail, but it cannot be said that such failure constitutes negligence as a matter of law.

8. **INSTRUCTIONS: Instruction Assuming Facts Objectionable.** In an action for damages against a suburban railroad for injuries sustained by a prospective passenger, struck while standing on a station platform by a car charged to have been operated at such a high and negligent rate of speed that it could not be stopped, etc., an instruction that if the jury find from the evidence that the car was at the time being driven at such a high and negligent rate of speed, etc., *held* objectionable, because it assumes that the car was being driven at a high and negligent rate of speed.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Benj. J. Klene,* Judge.

REVERSED AND REMANDED.

*Charles W. Bates, T. E. Francis, Alva W. Hurt* and

*Chauncey H. Clarke,* attorneys for appellant.

The court erred in refusing to give to the jury the instruction in the nature of a demurrer to the evidence requested by defendant, for the reason that plaintiff made no showing entitling him to have the case submitted to the jury on any theory of pleaded negligence. (a) Plaintiff did not show that any of the alleged omissions of duty counted upon constituted the proximate cause of his injury for, the evidence showed, he would have been injured by being crowded into the right front corner of the car by the pushing forward of the crowd toward the car, even had defendant not been guilty of negligence in the respect alleged. Battles v. United Rys. Co., 178 Mo. App. 596, 614; King v. Wabash R. C., 211 Mo. 1, 13; Winchell v. St. Paul City Ry. Co., 86 Minn. 445, 446, 90 N. W. 1050, 1051; State ex rel. National Newspaper Ass'n v. Ellison, 176 S. W. 11, 12; Jackson v. Butler, 249 Mo. 342, 366; McGee v. Wabash R. Co., 214 Mo. 530, 543. (b) At the very most, the evidence showed, plaintiff's injury might have resulted from one of two causes for one of which and not the other defendant was liable; and plaintiff made no showing of reasonable certainty that he was injured by defendant as the direct result of either of the alleged omissions of duty. Warner v. St. L. & Meramec R. Co., 178 Mo. 125, 133; Strother v. Chicago, B. & Q. R. Co., 188 S. W. 1102, 1105; Nevinger v. Haun, 197 Mo. App. 416, 427; Goransson v. Riter-Conley Mfg. Co., 186 Mo. 300; 307; Coin v. Talge Lounge Co., 222 Mo. 488, 508. (2) Plaintiff's instruction No. 1, which covered his case and directed a verdict, is erroneous for the following reasons: (a) It omitted the requirement that the jury find negligence on defendant's part. Hall v. Manufacturers' Coal & Coke Co., 260 Mo. 351, 367; Stone v. Hunt, 94 Mo. 475, 480; Utterback v. St. L. & S. F. Ry. Co., 189 S. W. 1171, 1173; Greenstein v. Christopher & Simpson Architectural Iron & Foundry Co., 178 S. W. 1179, 1183. (b) It assumes that the car was being operated at a "high and negligent" rate of speed, which was a disputed issue of fact in the case. Wease v. Fayette R. Plumb Tool Co., 187 Mo. App. 716 719; Dority v. St.

L. etc. R. Co., 188 Mo. App. 365; 375; Ganey v. K. C., 259 Mo. 654, 663. (c) It required defendant, as a matter of law, to sound both the whistle and the gong, when it was a question for the jury to determine defendant was negligent if, when it sounded the whistle, it did not sound the gong. Turner v. K. C. & St. Joe etc. R. Co., 78 Mo. 578, 580; Burrows v. Likes, 180 Mo. App. 447, 454; Wingert v. Philadelphia & Reading Ry. Co., 262 Pa. 21, 23; Byrne v. N. Y. Central etc. R. Co., 104 N. Y. 362, 368; Van Patten v. Schenectady Ry. Co., 80 Hun (N. Y.) 494, 496. (d) It authorized the jury to find for plaintiff if they found that his personal injuries resulted from defendant's failure to stop the car at the station, when a failure to stop at the station could, in no event, be the proximate cause of such personal injuries, for the only damages that could proximately result from such failure to stop at the station would be damages resulting from the refusal to stop, which would consist of delay or loss of time. South Chicago City Ry. Co. v. Dufresne, 200 Ill. 456, 458; Gunn v. United Railways Co., 270 517, 528. (e) It consisted a roving commission to the jury to assess damages for whatever injuries they thought plaintiff had sustained. Jenkins v. Womack, 143 Mo. App. 410, 415; Allen v. St. L. Transit Co., 183 Mo. 411, 432. (f) It authorized the jury to find for plaintiff if they found that the motorman operated the car at such a high and negligent rate of speed that the motorman could not stop the car at the station after he saw, or by the exercise of ordinary care could have seen, plaintiff or other persons at said station who intended to board said car, when there was no evidence tending to show that such theory of negligence was the proximate cause of plaintiff's injury for, the evidence showed, he would have been injured by being crowded into the right front corner of the car by the pushing forward of the crowd toward the car, even had defendant not been guilty of negligence in the respect hypothesized. See authorities cited under point I. (g) It authorized the jury to find for plaintiff if they found defendant failed to sound a gong or whistle, when there was no showing made that such theory of negligence was

the proximate cause of plaintiff's injury for, the evidence showed, he would have been injured by being crowded into the right front corner of the car by the pushing forward of the crowd toward the car, even had defendant not been guilty of negligence in the respect hypothesized. See authorities cited under point I. (h) It authorized the jury to find for plaintiff if they found defendant failed to provide a light at the station, or a headlight on the car, so that the motorman could see plaintiff or other persons at such station in time, by the exercise of ordinary care, to stop the car or check its speed in time to avoid injury to plaintiff, for the reason that no showing was made that such theory of negligence was the proximate cause of plaintiff's injury for, the evidence showed, he would have been injured by being crowded into the right front corner of the car by the pushing forward of the crowd toward the car, even had defendant not been guilty of negligence in the respect hypothesized. See authorities cited under point I. (3) The court erred in giving, on behalf of plaintiff, instruction No. 6, for the reason that it authorized the jury to assess damages for (a) loss of earnings, (b) inabiliy by plaintiff to earn a living, and (c) impairment of his earning capacity, thereby trebling his damages. Louisville & Nashville R. Co. v. Kirby, 173 Ky. 399, 405, 191 S. W. 113, 116.

*Bartley & Douglass,* for respondent.

(1) The court did not err in overruling the demurrer offered by the defendant at the close of plaintiff's case. (a) In passing on a demurrer to plaintiff's evidence, the court must consider the evidence introduced by plaintiff as true and make every finding and deduction in his favor which the jury would have been warranted in making. Meenach v. Crawford, 187 S. W. (Mo. Sup. Ct.) 879, l. c. 882; Williams v. Railroad, 257 Mo. l. c. 112; Grouch v. Heffner, 184 Mo. App. 365, l. c. 372; Irwin v. United Rys. Co., 196 Mo. App., 666; Most v. Gobel Const. Co., 199 Mo. App. 336. (b) It is elementary in this state that a demurrer to the evidence admits as true every fact and

inference that may be reasonably deducted therefrom. Strauchon v. St. Ry. Co., 232 Mo. 587, l. v. 595; Irwin v. United Rys. Co., 196 Mo. App. 666, l. c. 670, and citations; Parker-Washington Co. et al. v. James Dennison, 249 Mo., 499, l. c. 469; Geradi v. Gardner et al., 255 Mo. 538, l. c. 562-3; Clark v. Railroad, 234 Mo., 396, l. c. 280; Powers v. Transit Co., 202 Mo. 267, l. c. 280; Yost v. Cement Co., 191 Mo. App., 422, l. c. 432. (c) "Where defendant, in his demurrer to the evidence at the close of plaintiff's case was overruled, introduced evidence, the demurrer must be viewed in the light of all the evidence, although the demurrer should have been sustained as the case stood when the demurrer was transposed." Boeckmann v. Valier & Spies Milling Co., 199 S. W. 457. (2) It was negligence as a matter of law for the defendant to run its car past the station on a dark night without having a headlight on it or without sounding his whistle or gong. Buren v. St. Louis Transit Co., 104 Mo. App. 224, l. c. 231 (such an act is called gross negligence); Cotner v. Railroad Co., 220 Mo., 284, l. c. 311; Clover v. Railway Co., 140 Mo. App., 413, l. c. 194; Conrad Grocery Co. v. Railroad Co., 89 Mo. App., 391, l. c. 394-5; Becke v. Railway Co., 102 Mo., 544, beginning in third line from bottom of page 551; Kippenbrock v. Wabash Ry. Co., 270 Mo., 479, l. c. 484 and citations. (3) The plaintiff "was an invitee whose presence the operators of the car were bound to anticipate and for whose safety they were requred to exercise special care, and it was negligence for them to run the car past the station at a high rate of speed, without taking any precautions for the safety of such persons." Meierhoff v. United Railways Co., 186 Mo. App., 567. (4) "If upon a given state of facts negligence can be clearly asserted, then the court may so declare." Becke v. Railway Co., 102 Mo., 544, l. c. 551. (5) Plaintiff was not guilty of contributory negligence for "negligence is not imputable to a person for failing to look out for danger when under the surrounding circumstances, he had no reason to suspect any." Lagan v. Railway Co., 72 Mo., 392, l. c. 398; Hill v. Electric Light & Power Co., 260 Mo., 43, l. c. 912;

Buesching v. Gas Light Co., 73 Mo. 219, 1. c. 230; Crawford v. St. Louis Yards Co., 215 Mo., 394, 1. c. 414, at top of page. (6) What is a negligent rate of speed depends upon the particular circumstances in each case. Van Natta v. Street Railway Electric Light and Power Co., 133 Mo. 13 (where five and a half miles an hour was held a negligent rate of speed). (7) While plaintiff was at this station he had a right to assume that any car approaching this station would do so with a headlight burning and that the motorman would whistle or sound a gong, and that he would have the car under such control that he could stop at the station, and with safety to persons at the station waiting for a car. (8) Plaintiff's instruction number one is not subject to the criticism made by defendant. (a) As all the acts of negligence could properly be declared by the court to be negligence as a matter of law. (b) It does not assume the car was being operated at a high and negligent rate of speed. (c) It did not require defendant, as a matter of law, to sound both whistle and going, as the conjunction *or* is used in this assignment of negligence. (d) There is no such requirement in the instruction.

BIGGS, C.—Upon a charge that the defendant Railways Company was guilty of negligence in the operation of one of its cars, causing plaintiff to be injured, the plaintiff had a verdict of a jury, followed by a judgment for $5,000. The defendant brings the case here for review.

The Railways Company owns and operates a line of suburban cars, known as the Creve Coeur line, extending from Delmar Garden near the western St. Louis city limits to Creve Coeur Lake in St. Louis County. In a rural neighborhood a short distance west of the city limits, defendant maintains a station for the reception and discharge of passengers, known as Roth's Grove Station, at which point the defendant's tracks are elevated above the surrounding country, necessitating the defendant maintaining two elevated platforms level with the tracks, one on the north side, and the other on the

south side of the tracks. We are concerned mainly with the south platform, which was from 80 to 100 feet long and 7½ to 8 feet wide. A wooden railing is maintained by defendant along the southern edge of this platform, preventing persons intending to become passengers from falling down the embankment. An electric light was maintained near the station grounds, but on the night in question, for some reason, it was not burning. About sixty feet west from the west end of the platform there is a switch connecting the two tracks. Further west from this switch, about two hundred feet, is a culvert. The tracks are level and straight for some distance both east and west from the station. There are large trees on both sides, which to some extent overhang the tracks. The platforms are constructed level with the top of the rail, and both the platform and railroad are made of cinders, a black substance. The space between the rails is some three inches lower than the platforms. The manner of reaching these platforms from the north was by means of steps leading to the north platform, and in order for one coming from Roth's Grove, which was on the north side, to reach the platform on the south side, it was necessary to go up to these steps to the north platform and cross the defendant's tracks.

At about 8 p. m. on Sunday, August 27, 1916, plaintiff, a young man about twenty-one years of age, was standing in a crowd of persons on this south platform intending to become a passenger on defendant's eastbound car. It was a cloudy night and had been raining that day. While standing on this platform, one of the defendant's cars passed the platform, and the right front corner of the car struck plaintiff's left shoulder, causing him to be thrown down under the car, resulting in his left leg being crushed to such an extent that amputation was necessary.

The charges of negligence are these: (1) that the motorman approached said station at such a high and negligent rate of speed that he could not stop the car at said station after he saw, or by the exercise of ordinary care could have seen, there were persons at said station who intended to board said car; (2) that the motorman

in charge of said car failed to sound his gong or whistle or give any timely warning of the approach of said car, and (3) the defendant failed to provide a light at said station or headlight on said car so the motorman could see plaintiff and other persons at said station in time by the exercise of ordinary care to stop his car or check its speed in time to avoid injury to plaintiff.

The first contention made by defendant is that the lower court should have directed a verdict for defendant, for the reason that the evidence shows the plaintiff's injuries were caused solely by reason of the plaintiff being crowded into the right front corner of the car by the pushing forward of the crowd which was on the platform, this constituting, as contended by defendant, the proximate cause of his injury, and therefore defendant is not liable even though it may have been negligent. In other words, that the alleged negligent acts of defendant were not shown by the evidence to have been the cause of plaintiff's injuries, but that it was shown that the cause thereof was the pushing on the part of the crowd.

Plaintiff's evidence tended to prove, that due to the weather, absence of light on the platform, overhanging trees, and the black cinders on the platform and right-of-way, that it was very dark about this platform on the occasion in question; that there were many people on the platform, and the crowd surged back and forth pushing in different directions; that it was so dark that the plaintiff could not see the tracks without stepping over the rail between the tracks, which was lower than the platform, and therefore he could not appreciate the fact that he was standing too near the track and in a position of danger. It is uncontradicted there was no light at the station, and that at the time the headlight of the car was not burning. The cars on these lines were equipped with two headlights, a small one for use in the city limits, and a large bright headlight for use in the county. Both headlights and the front platform lights were out of order at the time, but the lights on the inside of the car were burning.

The car was furnished the crew about three o'clock in the afternoon, and while the motorman in his cross-examination testified that it was sent out with the headlights out of repair, it is plain from reading his testimony as a whole, that he did not discover the defective condition of the headlights until about seven o'clock in the evening, when the car was on its way; and that he did not in fact know when they became out of order. And it does not appear from the evidence when the lights became defective. It does appear that such defective condition of the headlight was not discovered by defendant's employees until about seven o'clock and after the car had left Delmar Garden.

Plaintiff testified that at the time he was standing in the crowd about the center of the platform and back from the rails; that it was very dark and one could only tell where the rails were by stepping over them into the space between; that the people were standing all around him; that they were watching for a car, and the crowd would surge back and forth; that while waiting for the car, the crowd kept crowding from one place to another; that they started to pushing, and the first thing he knew the car hit him.

While plaintiff's testimony indicates that the crowd was pushing back and forth, still he does not say that he was pushed into the car by the crowd just as it approached. Mrs. Keller, a witness for the plaintiff, testified that the plaintiff was standing directly in front of her at the time he was hit by the car, and that she did not touch or push him. George Allsmeyer, another witness, was standing directly west of plaintiff. This witness saw the car in time to crowd back out of its way. The plaintiff did not see the car in time to get out of his place of danger. While plaintiff's testimony on cross-examination is somewhat contradictory, and the evidence given at the present trial to some extent contradicts that given at a prior trial, in that the plaintiff testifies on the second trial that he did not know whether he was pushed or not at the time, we think that what-

ever pushing was done by the crowd at the time was not of such an aggravated character as to cause plaintiff to be irresistibly thrust against the corner of the car at the time it approached the station. For instance, Mrs. Keller was directly behind the plaintiff, and she did not push him. Witness Allsmeyer was directly west of the plaintiff, and it was not shown that he in any way pushed the plaintiff.

It is elemental that in considering a demurrer to plaintiff's evidence, we must take all of plaintiff's testimony as true and make every reasonable deduction in his favor which the jury would have been warranted in making. Viewing the matter in this light, we think that reasonable minds may well differ as to whether the plaintiff was in fact pushed by the crowd into the car at the time the car passed the station.

But, concede, for the purpose of the argument, that plaintiff was pushed by the crowd into a place of danger where he was struck by the car, can this be said to have been sole proximate cause of his injuries? We think not. Plaintiff's evidence tended to show that the defendant's car approached this station with no headlight burning, and with no light on the front vestibule of the car; that no whistle or gong was sounded or other warning given, and that the car passed the station at a speed of ten miles an hour, and ran from fifty to sixty feet past the east end of the platform before being stopped. These acts could be said to constitute negligence on the part of the defendant, and the jury could have determined such acts to have been the proximate cause of plaintiff's injuries, notwithstanding plaintiff was pushed by the crowd. Had the defendant not been guilty of these negligent acts, assuming them to have been committed, the plaintiff would have had timely warning of the approach of the car, and even though he was pushed by the crowd he could have done some crowding on his own part and pushed himself to a place of safety, as was done by the witness Allsmeyer, who stood directly beside him and happened to look west at the time and saw the car approaching.

A number of witnesses who were on the platform testified for plaintiff. Some of them saw the car just before it reached the platform; some of them as it passed the platform, and others not until after it had gone by.

The doctrine of concurrent negligence is well established in this state, and a defendant may be liable even if the accident was not caused by his sole negligence. If the defendant's negligence concurred with that of another or with the act of God and became a part of the direct and proximate cause of the injury, although not the sole cause, the defendant is still liable. [Harrison v. Kansas City Electric Light Company, 195 Mo. 606, 93 S. W. 951; Buckner v. Horse & Mule Co., 221 Mo. 700, 709-711, 120 S. W. 766; Obermeyer v. Logeman Chair Mfg. Co., 229 Mo. 97, 129 S. W. 209; Dugdale v. Power Co., 189 S. W. 830 (Kansas City Court of Appeals); Miller v. United Railways Co., 155 Mo. App. 528, 134 S. W. 1045; Daneschocky v. Sieble, 195 Mo. App. 470, 193 S. W. 966.]

We hold, under the rule laid down in the above authorities, that the fact that the defendant's car approached this station without a headlight and without any warning by sounding the whistle or gong, and that as it approached the plaintiff was shoved by this crowd into a place on the platform where he was hit by the car, still the defendant could be held liable, as the alleged negligence of the defendant concurred with the act of the crowd in shoving plaintiff into a position of danger, and the jury could find that such acts of negligence on the part of the defendant were the proximate cause of plaintiff's injuries. As heretofore stated, had the defendant not been guilty of the acts of negligence charged against it, plaintiff would have had ample warning of the approach of the car, and even if he was pushed by the crowd he could have avoided being injured by crowding back away from the car.

We recognize the rule that plaintiff carried the burden of showing with reasonable certainty that the negligent act of defendant was one of the proximate

causes of his injury, and that such fact must not be arrived at by speculation and conjecture. The causal connection can rarely be shown by direct evidence and is usually arrived at by inferences which may be reasonably and legitimately drawn from the facts. In the present case the jury could reasonably conclude that even though plaintiff was pushed by the crowd into a place of danger, that the injury to plaintiff would not have occurred if there had been a headlight on the car or a timely warning given of its approach, for in that event plaintiff would have been apprised of the car's coming and could have crowded back from his perilous position.

It cannot be said, as contended by the learned counsel for defendant, that the injury to plaintiff would have occurred even though the car was moving very slowly, and even though the gong and whistle had both been sounded, and even though the headlight had been burning and the platform had been lighted.

We rule that the case was one for the jury.

It is contended by the defendant that the Court erred in its main instruction to the jury on behalf of the plaintiff, which covered the whole case and directed a verdict.

The instruction complained of, in effect, declared as a matter of law that if the defendant operated the car at such a high and negligent rate of speed that the motorman could not stop the car at said station after he saw, or by the exercise of ordinary care could have seen plaintiff or other persons at said station who intended to board said car; or, if the defendant failed to sound the gong or whistle or give any other timely warning of the approach of said car; or, that the defendant failed to provide a light at said station or a headlight on said car so the motorman could see plaintiff or other persons at said station in time, by the exercise of ordinary care, to stop the car or check its speed in time to avoid injury to plaintiff, *then in either case the defendant is guilty of negligence.*

It will be noted this instruction does not require the jury to find that the defendant's acts of omission constituted negligence, but directs the jury to find the defendant guilty of negligence if they found that the defendant operated the car at such a high rate of speed as to be unable to stop at the station, or had failed to give warning by sounding the whistle or gong, or to have the platform or headlight lighted. The defendant admitted that the headlight was not burning, but introduced evidence tending to excuse such fact by showing that it had recently become out of order and at the time was being moved to a place where the headlight could be fixed, or else the car turned in and another obtained. Furthermore there was considerable evidence on behalf of defendant tending to show that the whistle was sounded by the motorman some 250 feet west of the station. We think that in order to hold the defendant liable the jury must find that the defendant was in fact negligent, that is failed to exercise due care under the circumstances, and that the Court was not justified in declaring as a matter of law, under the circumstances of the case, that because the headlight was not burning, or because the whistle or gong was not sounded, that the defendant was guilty of negligence as a matter of law. [Greenstein v. Christopher & Simpson Iron Co., 178 S. W. 1179 (St. Louis Court of Appeals); Hall v. Manufacturers Coal & Coke Co., 260 Mo. 351, 168 S. W. 927; Utterback v. St. Louis & San Francisco Railway Co., 189 S. W. 1171; Walker v. White, 178 S. W. 254.]

Under some circumstances it is undoubtedly negligence as a matter of law for a railroad or street railway to operate its locomotive or cars without a headlight and for the Court to so declare, as was done in the cases of Becke v. Railroad, 102 Mo. 544, 13 S. W. 1053, and Kippenbrock v. Railroad, 270 Mo. 479, 194 S. W. 50. The facts in those cases are entirely different from the instant case, as there the locomotives were run at excessive rates of speed over portions of the road where the engineer had no right to expect a clear

track.   And furthermore, no contention was made in those cases that the headlights had recently or unexpectedly become defective.

In this case the defendant submitted evidence to the effect that the headlight was out of order, and such fact was not discovered until after the car left Delmar Garden; that it was impossible to repair the light en route, and that it was necessary to run the car to the sheds in this condition for repairs.   Under the circumstances it was the duty of the defendant to use great care in operating the car, especially in approaching its station grounds, where persons would likely be for the purpose of becoming passengers.   The defendant claimed and submitted evidence tending to prove that its car was carefully operated on the occasion in question; that it approached the station at a speed of three or four miles per hour, and that warning was given of its approach by blowing the whistle.   Plaintiff's evidence tended to show the contrary.   Under the facts of the case, we think it was a question for the jury as to whether it was negligence on the part of the defendant to run the car in its defective condition and in the manner in which it was run without a headlight.   [Alabama Great Southern Railroad Company v. Jones, 71 Ala. 487; Louisville & Nashville Railroad Company v. Jones, 71 Ala. 487; Louisville & Nashville Railroad Company v. Melton, 2 Lea (70 Tenn.) 262; Memphis City Railway Company v. Logue, 13 Lea (81 Tenn.) 32.]

In a case where the headlight is found to be out of order en route and where it is impossible to have it repaired and no course could be adopted except to stop the car on the track, thereby blocking other cars, or run it on in a careful manner to a point where it could be repaired or side-tracked and another obtained, we think that the operation of the car in its condition could not be said to be negligence as a matter of law; but it was a question for the jury whether, under the circumstances, the operation of the car in its condition and in the manner in which it was operated constituted negligence on the part of the defendant.

Furthermore, the matters submitted by this instruction are submitted in the disjunctive, and the jury are told, in effect, that if they find the facts submitted in either branch thereof, then the defendant is guilty of negligence; and that if plaintiff was injured as a direct result of either of such acts of negligence, then to find for plaintiff. One species of negligence thus submitted, as a distinct predicate of liability, is the failure to sound a gong or whistle or give other timely warning of the approach of the car to this platform. And the instruction tells the jury that if they find "that the motorman in change of said car failed to sound a gong or whistle or give any other timely warning of the approach of said car," then defendant was guilty of negligence, warranting a recovery. In other words, the instruction proceeds upon the theory that if, under the circumstances, defendant's motorman failed to give warning, by bell or whistle, of the approach of the car to this platform, such failure constituted negligence as a matter of law, or negligence per se. We de not think that this view is correct. While the jury might well find that the failure to give such warning was an act of negligence on the part of defendant's motorman, we do not think that it can be declared such as a matter of law. No positive duty was imposed by statutory law upon defendant's motorman to ring a gong or sound a whistle in approaching this platform. There is evidence tending to show that some of the electric bulbs inside of the car were lighted, and defendant's evidence is to the effect that light from these bulbs was cast not only from the sides of the car, but likewise through the front windows thereof situated on either side of the motorman; and while some witnesses on this platform did not see the car as it approached, there is abundant testimony, some of it given by plaintiff's witnesses, to the effect that the car was readily discernible as it approached the platform. Under these circumstances we regard it as clear that it was a question for the jury whether defendant's motorman was negligent in failing to give a warning of the approach of the car, if he did

so fail, but that it cannot be said that such failure constituted negligence as a matter of law. The instruction is therefore erroneous on this ground.

The instruction is further objectionable, because it assumes that the car was being driven at a high and negligent rate of speed, as it says that if the jury finds from the evidence that the car was at the time being driven at *such* a high and negligent rate of speed, etc. While we do not say that this objection standing alone would constitute reversible error, still upon a retrial this should be corrected and it should not be assumed that the car was going at a high rate of speed, because this was a disputed fact under the evidence, as the motorman and other witnesses for the defendant said that the car was going only three or four miles per hour as it passed the station.

Other objections raised to this instruction and other specifications of error, if meritorious, are not likely to again occur upon another trial, so it will be unnecessary to prolong this opinion by a discussion of the questions.

For the reasons stated herein, the judgment should be reversed and the cause remanded for another trial.

PER CURIAM:—The foregoing opinion of Biggs, C., is adopted as the opinion of the Court.

The judgment of the Circuit Court is accordingly reversed and the cause remanded for another trial.

*Reynolds, P. J., Allen* and *Becker, JJ.,* concur.